AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One (1) Target Location and One (1) Target Vehicle,<br>as more fully described in Attachment A. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No.   **MJ20-009** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

One (1) Target Location and One (1) Target Vehicle, as more fully described in Attachment A, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) & 846 | Distribution to Distribute Controlled Substances and Conspiracy to Distribute Controlled Substances |
| 21 U.S.C. § 952(a) | Importation of Controlled Substances |
| 18 U.S.C. § 1956 | Money Laundering and Conspiracy to Launder Money |

The application is based on these facts:

✓ See Affidavit of DEA SA Kevin Palermo continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Kevin Palermo, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____1/10/20_____

_____
*Judge's signature*

City and state: __Seattle, Washington__

Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF KEVIN PALERMO

STATE OF WASHINGTON )
) ss
COUNTY OF KING )

I, KEVIN PALERMO, a Special Agent with the Drug Enforcement Administration, Seattle, Washington, having been duly sworn, state as follows:

## AFFIANT BACKGROUND

1.      I am employed as a Special Agent (SA) with DEA, and have been so employed since August 2016.  I am currently assigned to the Seattle Field Division, and as such I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 801, et seq.  and Title 18, United States Code, Section 2516(1).  I received specialized training in the enforcement and investigation of the Controlled Substance Act.  I received over 620 hours of classroom training including, but not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing, and illicit trafficking of controlled substances.  Prior to becoming a Special Agent with DEA, I was employed as a police officer in the Village of Lincolnshire in Lake County, Illinois, from December 2014 to August 2016.  In that capacity, I was responsible for providing and promoting public safety in the Village of Lincolnshire and the State of Illinois by maintaining order, responding to emergencies, protecting people and property, and enforcing criminal and motor vehicle laws.  During this time, I was involved in investigations of criminal offenses including, but not limited to, narcotics, identity theft, burglary, fraud, DUI, theft, and domestic violence.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2.      In my role as a DEA Special Agent, I participated in narcotics investigations involving heroin, cocaine, marijuana, fentanyl, and methamphetamine, which resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotic related evidence and the forfeiture of narcotics related assets.  Based on my training and experience, I have become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances.  I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds.  Additionally, through my training and experience, I can identify illegal drugs by sight, odor, and texture.

3.      I have also worked on drug investigations involving the use of court-authorized wiretaps under Title III.  In that capacity, I have monitored, listened to, and reviewed transcripts and line sheets both in English and Spanish (prepared by linguists) documenting the content of hundreds of intercepted conversations involving the trafficking of cocaine, methamphetamine, heroin, and other narcotics, by persons who used some form of code to thwart law enforcement.  I have also interviewed defendants at the time of their arrest and debriefed, spoken with, and/or interviewed numerous drug dealers or confidential sources (informants) at proffer and safety valve interviews who were experienced in speaking in coded conversations.  In many of these interviews and debriefings, I was able to speak with these drug traffickers about specific conversations in which they were intercepted pursuant to electronic surveillance.  From these interviews, and also from discussions with other experienced agents, I gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of firearms to protect their narcotics related activities, cellular telephones, and other electronic means to facilitate communications while avoiding law enforcement scrutiny.

Affidavit of Kevin Palermo - 2
USAO 2019R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**PURPOSE OF AFFIDAVIT**

4.      This application seeks permission to search the following location and vehicle, which are more particularly described in Attachment A, for the evidence described in Attachment B, both of which are incorporated by this reference as if set forth fully herein.  As summarized herein, the **Target Location** and **Target Vehicle** are believed to be utilized by one or more participants in the crimes described herein, and there is probable cause to believe evidence of those crimes will be found at this location and vehicle:

      a.  **Target Location:** 2060 Kent Des Moines Rd. Apartment A-21, Des Moines, Washington 98198.  Hereafter the "**Target Location.**"

      b.  **Target Vehicle:** a purple in color 2014 Nissan Maxima[1] bearing Washington license plate BQZ3631 (hereafter the "**Target Vehicle**") registered to Karla E HERNANDEZ BARRON at 9241 17th Ave SW Apt 204, Seattle.

5.      I believe the **Target Location** and **Target Vehicle** are presently being used in the Western District of Washington in furtherance of the following federal criminal offenses: Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1), and/or conspiracy to commit that same offense in violation of 21 U.S.C. § 846.

6.      I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents and other evidence obtained during this investigation.  I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by the DEA.  When I refer to registration records for vehicles, I am relying on records obtained from the Washington State DOL.  Insofar as I have included event times in this affidavit, those event times are approximate.

---

[1] Purple is the listed color of the **target vehicle** on Washington DOL, however investigators conducting physical surveillance have described the color as black or maroon.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.      Since this affidavit is being submitted for the limited purpose of obtaining authority to search the **Target Location** and **Target Vehicle**, I have not included every fact known concerning this investigation.  I have set forth only the facts that I believe are essential for a fair determination of probable cause that the target subject(s) are involved in drug trafficking, and the **Target Location** and **Target Vehicle** are being used to facilitate that drug trafficking.

### SUMMARY OF PROBABLE CAUSE

8.      On December 20, 2019, at approximately 1:26 p.m., investigators established surveillance on the cooperating witness' (hereinafter CW) residence located in Lynnwood, Washington.[2] Surveillance observed multiple vehicles that agents knew the CW had previously used parked near the residence.

9.      At approximately 6:47 p.m., agents observed one of the vehicles known to be used by the CW (hereafter the CW vehicle) turn on and begin to travel through the parking lot. Agents conducted mobile surveillance of the CW vehicle and followed it to 15700 44th Ave W, Lynnwood, Washington.

10.      At approximately 6:57 p.m., agents observed the CW vehicle departing 15700 44th Ave W, Lynnwood, Washington and travel south towards Seattle and then to Kent, Washington. Agents maintained mobile surveillance on the CW vehicle until they observed it turn into a parking lot where it appeared to be travelling towards an apartment complex located at 1401 W Meeker St., Kent, Washington. Shortly thereafter, agents observed the vehicle briefly park in front of Emerald City Smoothie, located at 1313 W Meeker St., Kent. A short time later, agents observed the vehicle leave the vicinity and travel to a nearby Taco Time restaurant.

---

[2] At the time, the Cooperating Witness (CW) was not yet cooperating with law enforcement.  He/she began to cooperate after being detained as described in this affidavit. The CW is cooperating for potential charging considerations for narcotics and firearms related offenses, to include offenses described in this affidavit. I believe the CW has been truthful about the events described in this affidavit, much of which (as described herein) has been corroborated by surveillance observations and/or directly observed by agents. I do not believe the CW has been completely truthful or forthcoming as to the entirety of his/her criminal involvement with other individuals and his/her other criminal activity.

Affidavit of Kevin Palermo - 4
USAO 2019R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     After the CW vehicle parked at the Taco Time, agents observed an unknown male (hereafter UM1) exit the passenger side of the CW vehicle, walk towards Taco Time, and enter the restaurant. Agents did not previously see UM1 enter the vehicle, which may have happened when the CW vehicle was near 1313 W Meeker St., Kent. This was later confirmed during the interview with the CW. Shortly thereafter, agents observed UM1 exit the Taco Time and quickly move across the road towards the Big Lots parking lot located at 1301 W Meeker St, Kent. Agents observed UM1 getting into a vehicle later identified as a 2014 Nissan Maxima bearing Washington license plate #BQZ3631 [hereafter the **Target Vehicle**].

12.     At approximately 8:06 p.m., agents observed the CW vehicle exit the Taco Time lot and travel onto I-5 going north. At approximately 8:37 p.m., a traffic stop was conducted on the CW vehicle. Following the stop, the CW provided consent to search the CW vehicle. Prior to searching the vehicle the CW admitted to agents there were narcotics and a firearm located in the CW vehicle. During the search of the CW vehicle agents located the following items:

   a.   A loaded Ruger Pistol under the front driver seat;

   b.   Approximately 1,000 Oxycodone pills or counterfeit Oxycodone pills located under the front driver seat; and

   c.   A suitcase containing approximately 20 pounds of methamphetamine (later field-tested positive as methamphetamine).

13.     Concurrent to the traffic stop, agents continued mobile surveillance on the 2014 Nissan Maxima (**Target Vehicle**). At approximately 8:06 p.m., agents observed the **Target Vehicle** pull out of the Big Lots parking lot located at 1301 West Meeker Street, Kent, Washington.  Investigators followed the **Target Vehicle** to Interstate 5.

14.     At approximately 8:15 p.m., agents observed the **Target Vehicle** exit the freeway at Exit 147 (South 272nd Street). Agents then observed the **Target Vehicle** enter a strip mall at an O'Reilly Auto Parts and Fred Meyer located north of South 260th Street on Pacific Highway South. The vehicle was located parked in the parking lot.

AFFIDAVIT OF KEVIN PALERMO - 5
USAO 2019R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15.    At approximately 8:50 p.m., agents observed a male return to the **Target Vehicle** with an apparent bag of food from La Central Tienda Mexicana Y Taqueria located at 25626 Pacific Highway South, Kent, Washington. The subject was the sole occupant of the **Target Vehicle**. The **Target Vehicle** departed and agents followed **Target Vehicle** to the Des Moines Station Apartments located at 2060 South Kent Des Moines Road, Des Moines, Washington, and park in front of Building A.

16.    Following the traffic stop, the CW agreed to speak with investigators. On December 30, 2019, an interview of the CW was conducted; during the interview the CW admitted being involved in the distribution of narcotics.  The CW described a situation in which he/she met an individual known to him/her as "Sinaloco" in the bathroom of the La Palmera Family Mexican Restaurant in Mill Creek, Washington, who was interested in forming a partnership with the CW to distribute narcotics. The CW gave "Sinaloco" his/hers bosses number and explained to investigators that all the decisions regarding adopting new drug customers or developing new business partnerships to distribute narcotics were made the CW's boss. The CW stated that his/her boss called him sometime thereafter and a partnership with "Sinaloco" was established. "Sinaloco" sent his new number to the CW and referred to himself as the "waterman".  Based on my training and experience I know the term "water" to be coded language for methamphetamine. I believe "waterman" to be a self-imposed nickname or reference for an individual who is involved in methamphetamine, based on previous conversations.

17.    The CW described "Sinaloco" as a Hispanic male with a muscular build. He stated that he is approximately 5' 8", has a short beard, and wears glasses. He referred to him as "Ciego", a Spanish word for "blind." The CW stated that "Sinaloco" dresses casually, typically in blue jeans or sweatpants. The CW stated that "Sinaloco" drives a dark burgundy/purple colored vehicle similar to a Nissan Sentra or Nissan Maxima and that "Sinaloco" drove the same vehicle during previous meetings. Investigators believe the CW described the **Target Vehicle** observed by surveillance units on December 20, 2019.

AFFIDAVIT OF KEVIN PALERMO - 6
USAO 2019R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    18.    Investigators asked the CW to describe the events surrounding the

2    December 20, 2019, traffic stop in greater detail. The CW stated that, prior to the traffic

3    stop, he/she met with "Sinaloco" in the parking lot of the Big Lots in Kent, Washington.

4    The CW said that he/she parked next to "Sinaloco" in the parking lot and "Sinaloco" got

5    out of the **Target Vehicle** and accessed the trunk where "Sinaloco" removed a large

6    suitcase containing the methamphetamine. "Sinaloco" placed the suitcase into CW's

7    vehicle. "Sinaloco" then returned to the **Target Vehicle** and obtained a firearm and the

8    bag containing the approximately 1,000 trademark opiates or counterfeit trademarked

9    opiates, and entered the passenger seat of the CW's vehicle. The CW proceeded to drive

10   the pair near the Taco Time across the street, and returned to the Big Lots parking lot

11   moments later to drop "Sinaloco" off near the **Target Vehicle**. The CW stated that

12   "Sinaloco" gave him/her the firearm because "Sinaloco" was leaving and it could be used

13   to protect the narcotics.[3]

14   19.    During the interview, the CW provided the following telephone number for

15   "Sinaloco": 980-900-8183 (Target Telephone). The CW mentioned that he/she

16   communicates with "Sinaloco" exclusively via WhatsApp. WhatsApp is a free

17   application owned by Facebook and allows users to send text messages, voice messages,

18   videos and documents to other individuals using their mobile telephone numbers. To

19   search whether the target telephones were using the WhatsApp application, agents

20   obtained a cellular telephone with the WhatsApp application installed on it. Agents saved

21   the target telephone numbers (Target Telephone) in the "contacts" for the telephone.

22   Agents then used the WhatsApp application to search the saved contacts determine if any

23   of contacts also maintained a WhatsApp account linked to the contacts' respective

24   telephone number. Agents located an account linked to the Target Telephone. I reviewed

25   the profile picture for the account associated with the Target Telephone, and was able to

26

27

---

28   [3] I do not believe the CW's statement about the obtaining the pills or the firearm from "Sinaloco" are true. I believe
     the CW was in possession of the firearm and pills before he met with "Sinaloco" to obtain the methamphetamine.

AFFIDAVIT OF KEVIN PALERMO - 7
USAO 2019R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

confirm the picture I observed on the agent's telephone is the same image for the contact I observed on the CW's phone for Target Telephone.

20. Agents had the CW WhatsApp message "Sinaloco" in their presence. The following conversation occurred in Spanish and was translated by Spanish speaking linguists contracted by the DEA:

> **CW**: I just got out of the hospital, give me a week so I can take the stuff out [sell the methamphetamine]. I still don't feel well
>
> **TT**: okay, sounds good.
>
> **TT**: But would you be able to take 20 in a week [twenty units of drugs in a week]
>
> **CW**: Yes, they are thirsty [redistributors need methamphetamine], as a matter of fact, I will need more [needs more methamphetamine]
>
> **TT**: Ok that's fine
>
> **TT**: I'm going to start looking for more
>
> **CW**: I'll let you know buddy, we'll be in touch
>
> **TT**: sounds good, take care, cover yourself its tough [be careful]

21. Based on the conversation above and my training and experience, coupled with the information provided by the CW, I believe the user of Target Telephone and the CW were discussing the CW selling the previously obtained narcotics and receiving more "in a week." Based on my conversations with the CW, and my training and experience, when the user of the Target Telephone asks, "would you be able to take 20 in a week" I believe they are asking if the CW can take an additional 20 pounds of methamphetamine.

22. On December 31, 2019, at approximately 9:51 a.m., agents observed the **Target Vehicle** parked in the same approximate parking spot in front of Building A at the **Target Location**.

23. On January 3, 2020, the Hon. Mary Alice Theiler, of the Western District of Washington, authorized a tracking warrant for the **Target Vehicle** and a Tracking Warrant for the Target Telephone (980-900-8183) used by "Sinaloco".

24. On January 6, 2020, agents established surveillance at the **Target Location**. When agents arrived, the **Target Vehicle** was not present. At approximately

AFFIDAVIT OF KEVIN PALERMO - 8
USAO 2019R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

2:30 p.m., agents observed the **Target Vehicle** enter the parking lot of the **Target Location**. GPS location data for the **Target Vehicle** matched the travel pattern of the vehicle as observed by agents. Agents observed and photographed an unknown male exit the **Target Vehicle** and enter the **Target Location**.

25.     Later in the day on January 6, 2020, agents met with the CW. The CW was shown a surveillance photo of the unknown male who exited the **Target Vehicle** and entered the **Target Location** earlier that day as described above. The CW stated the individual in the photo was known to the CW as "Sinaloco" and was the same individual from whom the CW had previously obtained the narcotics on December 20, 2019. The CW was then shown a photo of a "Crimson black" 2014 Nissan Maxima[4], the CW confirmed the photo shown matched the **Target Vehicle** the CW had met with previously as described herein.

26.     Agents had the CW WhatsApp message "Sinaloco" to confirm a meeting later this week. The entire conversation was made at the direction of agents.  Agent observed the initial text message sent by the CW. The CW forwarded screen shots of the rest of the conversation to the agents, which were translated using a translation application. During the conversation, the CW and "Sinaloco" established they would meet later during the week to conduct a narcotics transaction.

27.     On January 7, 2020, agents established surveillance at the **Target Location**. At approximately 10:57 a.m., agents observed the individual identified as "Sinaloco" walking from the third floor, which leads to Apartment A-21 (**Target Location**)[5]. The male walked to the **Target Vehicle** and departed the area.

28.     Later that same day, at approximately, at approximately 2:46 p.m., GPS location data for the **Target Vehicle** indicated the **Target Vehicle** had returned to the

---

[4] The photo shown was not the actual **Target Vehicle**, but the same make, model, and suspected color of the **Target Vehicle**.

[5] The only two apartments located on the third floor of the alcove observed by agents are apartments A-21 (**Target Location**) and A-22.

1  **Target Location**. At approximately 2:51 p.m., agents observed, via remote video

2  surveillance, "Sinaloco" enter into the Apartment A-21, the **Target Location**. At

3  approximately 4:45 p.m., agents observed, via remote video surveillance, "Sinaloco" exit

4  the **Target Location**, carry garbage bags. Based on these observations, I believe

5  "Sinaloco" resides at the **Target Location.**

6       29.    According to GPS location data, since January 5, 2020, the date vehicle

7  GPS tracking was initiated, the **Target Vehicle** has parked over night at the **Target**

8  **Location**. Based on my training and experience, I believe the individual known to agents

9  and investigator as "Sinaloco" is residing within the **Target Location** and is driving the

10  **Target Vehicle.**

11       30.    On January 10, 2020, at approximately 1:04 pm GPS location data for the

12  **target vehicle** indicated the vehicle exited the parking of the target location and began

13  traveling. Agents conducted mobile surveillance in conjunction with GPS location data.

14  The vehicle stopped at several locations however agents did not observe any meetings

15  take place.

16       31.    At approximately 1:51 pm, at the direction of agents the CW was in

17  communication with "Sinaloco" via Whatsapp messenger. The following conversation

18  occurred in Spanish and was translated by a Spanish speaking employee of the FBI. The

19  following is a summary of the conversation.

20          Sinaloco: What's up I'm in that area let me know I'm just going to have

21          breakfast

22          CW: Yeah what's up, I have part of it now [money] and was told earlier I
        would have the rest. I will have 5 more. [5 thousand more]

23          Sinaloco: Ok

24          CW: What's up I have the rest of the paper [money]. I'm by Southcenter

25          mall I'll send you the address of the restaurant. I'm really close by.

26          CW: 15700 Southcenter parkway Tukwilla

27          SINALOCO: ok. I'll be there

        CW: How much time

28          Sinaloco: 15

Affidavit of Kevin Palermo - 10
USAO 2019R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CW: Ok. You are bringing me the 30 ice creams for the party right? [30 pounds of methamphetamine]

Sinaloco: yes.

32.     I believe, based on my training and experience, and my conversation with the CW I believe the CW was telling Sinanloco he/she had money and was ready to pay. Furthermore, I believe when the CW asked is the 30 ice creams were ready he was asking if he had 30 pounds of methamphetamine ready.

33.     After the communications, GPS tracking on the target vehicle show it traveled directly to the Bahama Breeze parking lot, located at 15700 Southcenter parkway Tukwilla, and park. Law enforcement personnel conducted a takedown of the vehicle and detained the male driver, who was the same individual observed as detailed above, and a female passenger. No narcotics were found during a preliminary sweep of the vehicle.  A K-9 sniff was conducted on the target vehicle and the K-9 indicated for the presence of narcotics on the trunk and the front passenger door.

## CONCLUSION

29.     For the reasons set forth above, I respectfully submit there is probable cause to believe that evidence of the crime of Distribution of Controlled Substances and/or Conspiracy to Distribute Controlled Substances, as described in Attachment B, will be found in the **Target Location** and **Target Vehicle**, further described in Attachment A, and ask that a warrant be issued to search the **Target Location** and **Target Vehicle** for said evidence.

//
//
//
//
//
//
//
//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### REQUEST FOR SEALING AND DELAYED NOTICE

Based upon my knowledge, training, and experience, it is my belief that the information contained in this affidavit, if prematurely disclosed to the public, could result in the targets' flight from prosecution, destruction of or tampering with evidence, intimidation or retaliation against potential witnesses, and could otherwise seriously jeopardize the ongoing investigation. Therefore, I request that this affidavit be sealed, and that notice required by Fed. R. Crim. P. 41(f) be delayed for up to ninety (90) days after execution of the search warrant, in accordance with Title 18, United States Code 3103a(b). If necessary, I may request that the Court, upon a showing of good cause, order a further adjournment of the time permitted to serve notice, if necessary to protect the safety of any individual, avoid flight or destruction of evidence, and ensure that the investigation is not jeopardized prior to its completion.

_____

Kevin Palermo
Special Agent
Drug Enforcement Administration

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 10th day of January, 2020.

_____

THE HON. BRIAN A. TSUCHIDA
Chief United States Magistrate Judge

AFFIDAVIT OF KEVIN PALERMO - 12
USAO 2019R00179

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## Attachment A
## Property to be Searched

The property to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found.

For physical locations, this includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location described below.

For vehicles to be searched, this includes all areas of the vehicle, all compartments, and all containers within that vehicle, whether locked or not.

## PREMISES

**Target Location** to be searched is 2060 Kent Des Moines Rd. Apartment A-21, Des Moines Washington, 98198.  Hereafter the "Target Location." The residence is an apartment, located at an Apartment Complex named Des Moines Station within Building A. Des Moines Station is a multi-building multi-apartment complex. Building A is tan in color with the letter A affixed to the exterior, and is located at the far north of the complex. Apartment A-21 has an exterior facing door on the north side of Building A. Apartment A-21 is located at the top floor on the left side. The stairs leading to Apartment A-21are located next to a placard labeled A – 21, 22,13,14,5,6. The door to Apartment A-21 is dark in color with the number "21" in white lettering labeled on a placard affixed to the door.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970




**VEHICLE**

**Target Vehicle** to be searched is a purple in color 2014 Nissan Maxima[1]  bearing Washington license plate BQZ3631 (hereafter the "Target Vehicle") registered to Karla E HERNANDEZ BARRON at 9241 17th Ave SW Apt 204, Seattle.



---

[1] Purple is the listed color of the **target vehicle** on Washington DOL, however investigators conducting physical surveillance have described the color as black or maroon.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Attachment B**

**Items to be Seized**

The items to be seized are the following items or materials that may contain evidence of the commission of, the fruits of, or property which has been used as the means of committing, federal criminal violations of Title 21, U.S.C. Sections 841(a)(1), including distribution and manufacturing of controlled substances, in violation of 21 U.S.C. § 841(a)(1), unlawful use of a communication facility, including USPS and UPS, to facilitate the distribution of controlled substances, in violation of 21 U.S.C. § 843(b), conspiracy to commit these offenses in violation of 21 U.S.C. § 846, and money laundering, in violation of 18 U.S.C. § 1956, as described below.

1.      Any controlled substances, including but not limited to marijuana, cocaine, cocaine, heroin, hashish, methamphetamine, MDMA, methadone, oxycodone, Oxycontin. "M30" pills, and fentanyl;

2.      Drug Paraphernalia:  Items used, or likely to be used, to cultivate, store, process, package, use/consume, and/or distribute controlled substances, such as lights, soil, fertilizer, fans, plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3.      Shipping Records and Supplies:  USPS, UPS, FedEx, freight companies, and any other packaging materials, including but not limited to boxes and crates, packing tape, shipping labels and invoices, mylar and similar bags, heat and/or vacuum sealing devices, packing peanuts or bubble wrap.

4.      Drug Transaction Records:  Documents such as ledgers, receipts, notes, invoices, and similar items relating to the acquisition, transportation, and distribution of controlled substances.

5.      Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

6.      Currency and Financial Records:  U.S. Currency, money orders, gift cards and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, and money counters.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.      Photographs/Surveillance:  Photographs, video tapes, digital cameras, surveillance cameras and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected growers or buyers or sellers of controlled substances, controlled substances or other contraband, weapons, assets derived from the distribution of controlled substances, and photographs of any documents or other items listed elsewhere in this Attachment.

8.      Weapons:  Including but not limited to firearms, magazines, ammunition, and body armor.

9.      Codes and Passwords:  Evidence of codes used in the distribution of controlled substances, including but not limited to passwords for cell phones and bank accounts.

10.     Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the past, present or future intended purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other properties.

11.     Indicia of occupancy, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents establishing occupancy.

12.     Evidence of Storage Unit Rental or Access:  rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units.

13.     Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of property including, but not limited to vehicles, vessels, boats, airplanes, jet skis, all terrain vehicles, RVs, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth,

14.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

      a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

      b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection accounts:  statements and other records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.      Receipts and records related to gambling wins and losses, or any other contest winnings.

i.      Insurance:  policies, statements, bills, and claim-related documents.

j.      Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

15.     All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

16.     All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash,  These documents are to include applications, payment records, money orders, frequent customer cards, etc.

17.     Negotiable instruments, jewelry, precious metals, financial instruments, stored value/prepaid cards, receipts for the purchases and expenditures made on stored value/prepaid cards, and other negotiable instruments.

18.     Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

19.     Correspondence, papers, records, and any other items showing employment or lack of employment.

20.     Telephone books, and/or address books, facsimile machines to include the carbon roll and/or other memory system, any papers reflecting names, addresses,

Attachment B
USAO 2019R00179 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists. Also, telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

21.     Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

22.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close compartments.

23.     Cell Phones: Cellular telephones and other communications devices may be seized, and searched for the following items:

a.     Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.     Stored list of recent received, sent, and missed calls;

c.     Stored contact information;

d.     Stored photographs of controlled substances, currency, firearms or other weapons, controlled substances cultivation, packaging, and/or paraphernalia, evidence of suspected criminal activity, including photographs of documents or other items described above, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

e.     Stored text messages.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970